IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| SARA MACDUFF,<br><br>    Respondent,<br><br>    v.<br><br>JOHN DARIN BOWEN,<br><br>    Appellant. | No. 87323-7-I<br><br>DIVISION ONE<br><br>UNPUBLISHED OPINION |

HAZELRIGG, C.J. — John Darin Bowen appeals from the imposition of a vulnerable adult protection order that prohibits his contact with Patricia Mayovsky. Bowen avers that substantial evidence does not support the court's order, the court failed to review all the evidence before entering the order, and that certain terms of the protection order exceeded the court's statutory authority. We disagree and affirm.

FACTS

In June 2024, Sara MacDuff petitioned for a vulnerable adult protection order (VAPO) in her capacity as Patricia Mayovsky's attorney. At that time, Mayovsky was over 80 years old and suffering from dementia and other health conditions. MacDuff's petition sought to protect Mayovsky from Bowen and asserted that he had "abandoned, abused, financially exploited, or neglected" her pursuant to RCW 7.105.225(1)(d). The petition alleged several incidents, including that Bowen had twice picked Mayovsky up from her retirement community and

taken her to her former residence which caused her distress when she discovered the residence had been rented. MacDuff further asserted in the petition that Bowen had provided Mayovsky with alcohol on two occasions, despite Bowen's knowledge of her longstanding problems with alcohol abuse. The petition was supported by declarations from MacDuff, Mayovsky's brother Ronald Mayovsky,[1] and Kelli Clopp, Mayovsky's relative[2] and agent pursuant to a durable power of attorney. MacDuff's declaration described Bowen as Mayovsky's "longstanding friend," and Ronald's declaration stated that Bowen had previously cared for Mayovsky's father.

Bowen defended against these allegations with his own declaration, transcripts of his phone calls with Mayovsky, and two reference letters attesting to his good character.

The trial court issued a temporary protection order at a hearing on July 8, 2024 and appointed a guardian ad litem (GAL). The trial court held a review hearing in August but continued the proceedings for an additional five weeks specifically to provide Bowen with time to obtain counsel. On September 19, the parties appeared before a King County Superior Court Commissioner, who expressly noted that he had read all of the materials filed by the parties and then heard testimony from MacDuff, the GAL, Clopp, and Bowen.

---

[1] Because Patricia and her brother, Ronald Mayovsky share the same last name and Ronald submitted a declaration in this case, we refer to Patricia by her last name and Ronald by his first name for the sake of precision and clarity. No disrespect is intended.

[2] Clopp referred to Mayovsky as her aunt, and the record establishes that Clopp is the daughter of Mayovsky's first cousin.

At the conclusion of the virtual hearing, the commissioner entered a VAPO effective for four years. The order relied on the GAL's report, the declarations submitted by the parties, and testimony which showed that Mayovsky was "a vulnerable adult—cognitively and physically." The order also noted that "Bowen has shown a remarkable lack of awareness of Ms. Mayovsky's medical and cognitive condition," included a finding that Bowen posed a credible threat to Mayovsky, and specifically that "Bowen's actions have created unsafe conditions for Ms. Mayovsky. The [c]ourt understands that Ms. Mayovsky would like the freedom to decide with whom she can associate. The possible value added to Ms. Mayovsky by choosing to associate with Mr. Bowen is outweighed by his harmful conduct." The VAPO imposed general restraints including no harm and no contact provisions, a provision prohibiting Bowen from being within 1,000 feet of Mayovsky's residence, and explicitly disallowed attempts at contact through third parties.

Bowen timely appealed.

ANALYSIS

I.     Burden of Proof in VAPO Proceeding

As a preliminary matter, relevant to Bowen's first assignment of error challenging the sufficiency of the evidence underlying the VAPO, the parties dispute the burden of proof that applies in a contested VAPO proceeding. This conflict appears to arise from the preprinted language in the King County Superior Court protection order form, used for a variety of different types of protection

orders, that was checked by the commissioner as applicable to the instant case, which reads as follows:

> Vulnerable Adult Objects. The petition was filed by someone other than the vulnerable adult and the vulnerable adult objects to some or all of the order. The court *finds by clear, cogent, and convincing evidence* the petitioner established that there is abandonment, abuse, financial exploitation, or neglect of a vulnerable adult and the vulnerable adult is unable, due to incapacity, undue influence, or duress, to protect their person or estate in connection with the issues raised in the petition or order based on the following evidence.

(Emphasis added) (boldface omitted.)   Following this preprinted language, the commissioner set out his various findings of fact.

Bowen contends that while the evidence was nonetheless insufficient to support the findings, the commissioner properly applied the clear, cogent, and convincing evidence standard.  Bowen urges this court to follow *In re Vulnerable Adult Petition for Knight*, 178 Wn. App. 929, 317 P.3d 1068 (2014).  *Knight* held that the standard of proof for a VAPO, under former RCW 74.34.110 (2007), in circumstances where the protected person objects, is clear, cogent, and convincing evidence.  178 Wn. App. at 937-38.  He contends that the legislature did not explicitly abrogate *Knight* when it amended the relevant VAPO statutes and "a heightened standard of proof is required" because "fundamental personal rights are at stake."  MacDuff avers that the commissioner should have applied a preponderance of the evidence standard to reflect the legislature's revision to RCW 7.105.225.  MacDuff would have us follow the reasoning set out in the unpublished opinion *In re Vulnerable Adult Petition of Cox*, which held that subsequent revisions to RCW 7.105.225 necessitate the application of a

- 4 -

preponderance of the evidence standard and thus *Knight*'s holding was "overridden."[3]

The parties agree that chapter 7.105 RCW controls here. In 2021, our legislature passed a bill entitled "Civil Protection Orders" with the stated intent to "improve the efficacy of, accessibility to, and understanding of, civil protection orders." LAWS OF 2021, ch. 215, § 1(7). To this end, it determined that the "the six different civil protection orders in Washington state should be included in a single chapter of the Revised Code of Washington." *Id.* That single chapter is chapter 7.105 RCW. RCW 7.105.225(1) states, "The court shall issue a protection order if it *finds by a preponderance of the evidence* that the petitioner has proved the required criteria specified in (a) through (f) of this subsection for obtaining a protection order under this chapter." (Emphasis added.)

"When a court interprets a statute, it does not construe an unambiguous statute because plain words do not require construction." *Muckleshoot Indian Tribe v. Dep't of Ecology*, 112 Wn. App. 712, 720, 50 P.3d 668 (2002). If the statute is unambiguous its meaning is "'derived from the language of the statute alone.'" *Food Servs. of Am. v. Royal Heights, Inc.*, 123 Wn.2d 779, 784, 871 P.2d 590 (1994) (quoting *Cherry v. Mun. of Metro Seattle,* 116 Wn.2d 794, 799, 808 P.2d 746 (1991)). We presume that the legislature is "'familiar with judicial interpretations of statutes, and absent an indication it intended to overrule a

---

[3] No. 39134-5-II, slip op. at 15 (Wash. Ct. App. July 9, 2024) (unpublished), https://www.courts.wa.gov/opinions/pdf/391345_unp.pdf.

Pursuant to GR 14.1, we may cite to unpublished opinions as necessary for a well-reasoned opinion. We cite this unpublished opinion solely because of the respondent's reliance on it in support of her position on this issue.

particular interpretation, amendments are presumed to be consistent with previous judicial decisions.'" *In re Est. of Bowers*, 132 Wn. App. 334, 342, 131 P.3d 916 (2006) (quoting *Pudmaroff v. Allen*, 138 Wn.2d 55, 64-65, 977 P.2d 574 (1999)).

RCW 7.105.225 is straightforward and unambiguous. Accordingly, we reject Bowen's contentions regarding the burden of proof for a VAPO. *Knight* addressed a statute that no longer governs VAPO proceedings and therefore, does not control here. However, we take this opportunity to encourage those responsible for maintaining standardized court forms to update the protection order to reflect this statutory amendment that became effective in 2022.

II.     Sufficiency of the Evidence

Bowen contends that "the trial court's findings are unsupported by the record." We disagree.

A trial court's decision to grant a protection order is reviewed for an abuse of discretion. *Cox v. Fulmer*, 31 Wn. App. 2d 485, 489, 555 P.3d 431 (2024). A trial court abuses its discretion if the issuance of the order "is manifestly unreasonable or based on untenable grounds or untenable reasons." *Id.* "We review a trial court's findings of fact for substantial evidence, generally deferring to the trier of fact on questions of witness credibility, conflicting testimony, and persuasiveness of the evidence." *In re Domestic Violence Prot. Ord. for Timaeus*, 34 Wn. App. 2d 670, 679, 574 P.3d 127 (2025). "Evidence is substantial when sufficient to persuade a fair-minded person of the truth of the matter asserted." *Id.* "Unchallenged findings of fact are verities on appeal." *Id.* at 677.

Bowen fails to reference specific factual findings, instead focusing on the more general finding of "abandonment, abuse, financial exploitation, or neglect." He asserts there is no possibility of any of the statutory grounds premised on a duty of care and, without conceding it truly applies, focuses his argument on the abuse basis for a VAPO. Critically, Bowen does not challenge the court's finding that Mayovsky is "a vulnerable adult—cognitively and physically." Nor does he challenge the finding

> that Mr. Bowen's actions have created unsafe conditions for Ms. Mayovsky. The [c]ourt understands that Ms. Mayovsky would like the freedom to decide with whom she can associate. The possible value added to Ms. Mayovsky by choosing to associate with Mr. Bowen is outweighed by his harmful conduct.

His failure to do so means that these findings are verities on appeal, and we need consider only whether there is substantial evidence to support the trial court's ultimate finding regarding abandonment, abuse, financial exploitation, or neglect.

RCW 7.105.010(2) provides an expansive definition of qualifying behavior, in relevant part, as follows:

> "Abuse," for the purposes of a vulnerable adult protection order, means intentional, willful, or reckless action or inaction that inflicts injury, unreasonable confinement, intimidation, or punishment on a vulnerable adult. . . . "Abuse" includes sexual abuse, mental abuse, physical abuse, personal exploitation, and improper use of restraint against a vulnerable adult, which have the following meanings:
> . . . .
>   (b) "Mental abuse" means an intentional, willful, or reckless verbal or nonverbal action that threatens, humiliates, harasses, coerces, intimidates, isolates, unreasonably confines, or punishes a vulnerable adult. "Mental abuse" may include ridiculing, yelling, swearing, or withholding or tampering with prescribed medications or their dosage.
> . . . .
>   (d) "Physical abuse" means the intentional, willful, or reckless action of inflicting bodily injury or physical mistreatment. "Physical

abuse" includes, but is not limited to, striking with or without an object, slapping, pinching, strangulation, suffocation, kicking, shoving, or prodding.

There was evidence before the trial court that Bowen's actions amounted to mental abuse in the form of isolation. MacDuff provided her own declaration as well as those from Mayovsky's relatives that stated Bowen's action had stoked enmity between Mayovsky and her family, isolating her from her existing support system. The VAPO noted that Bowen had "interfered with her family and legal relationships." There was also evidence of physical abuse from Bowen's decision to provide Mayovsky with alcohol, or at least provide her access to it. MacDuff testified that Mayovsky "has a history of alcohol abuse," Clopp's declaration stated that Mayovsky had been found wandering the Seattle University campus at night, and MacDuff's declaration explained that Mayovsky was taken to the hospital with alcohol poisoning after being found on the campus two days after Bowen had visited. The VAPO noted this evidence and also expressly included a finding that "Mr. Bowen has supplied alcohol." There were two separate grounds, established by substantial evidence, to support the finding of abandonment, abuse, financial exploitation, or neglect. The commissioner's ruling that granted the VAPO was not an abuse of discretion.

III.    Consideration of Evidence

Bowen next argues that the trial court failed to consider the evidence he submitted because it is not explicitly mentioned in the written list included in the VAPO and this failure amounts to an abuse of discretion that mandates reversal. This contention is directly contradicted by the record.

While Bowen is correct that the evidence he submitted is not expressly set out in the VAPO, the report of proceedings contains two separate express statements by the commissioner that he had reviewed the all of the materials the parties had provided. Early in the hearing, before any testimony was offered, the commissioner stated, "If you'll refer me to any declarations that you want to—*I did read it all*, but if there's information that you want me to look at, tell me the date of filing and what page." (Emphasis added.) Then, at the close of the proceeding, the commissioner said, "*I want to read the pleadings one more time. I'm going to do that*, and we'll get the written ruling e[-]mailed out to everybody shortly after the lunch hour." (Emphasis added.) Further, the list of evidence set out in the VAPO is clearly limited to that on which the commissioner relied for entry of the order. The preprinted language on the form that precedes the portion added by the commissioner states,

> The court finds . . . the petitioner established that there is abandonment, abuse, financial exploitation, or neglect of a vulnerable adult and the vulnerable adult is unable, due to incapacity, undue influence, or duress, to protect their person or estate in connection with the issues raised in the petition or order *based on the following evidence*.

(Emphasis added.) The omission of Bowen's evidence from the list that follows merely indicates that the commissioner did not *credit* Bowen's testimony or the documentary evidence that he had filed, not that he had failed to consider it.

IV.    Scope of Order

Bowen's final contention on appeal is that the limitations in the VAPO went beyond the scope of the trial court's statutory authority because it was not a

"tailored, proportional response." MacDuff responds that the broad scope of the prohibition on contact was necessary based on the GAL's conclusion that Mayovksy's "dementia and alcoholism, and Bowen's failure to act in a manner consistent with vulnerability" meant that "a total prohibition on contact between Bowen and Mayovsky was the best solution."

Again, as explained in Part II, *supra,* we review the trial court's decision to grant a protection order for an abuse of discretion and defer to the trial court as to witness credibility, conflicting testimony, and the persuasiveness of the evidence. The trial court enjoys a broad grant of discretion by the legislature and has the authority to enter an order "as it deems necessary for the protection of the vulnerable adult." RCW 7.105.220(4).

The GAL submitted a written report at the conclusion of his court-ordered investigation, and he testified at the hearing. He explicitly recommended that the court prohibit Bowen from having any contact with Mayovsky and explained that this was based on the following:

> [Bowen's] tendency to see this whole thing as a conspiracy to prevent Ms. Mayovsky from having contact with her friend, he's lacking insight. He is either in denial or he really does not understand the level of Ms. Mayovsky's dementia. It's quite advanced. Her memory is very impaired, and her own insight is very impaired. And coupled with her alcoholism, she's making very poor judgments for herself. And he either refuses to acknowledge that or he can't understand it. And either way, I think it's best that he not have any contact with her.

Further, Ronald's written declaration stated that he had tried to talk with Bowen "many times about [Mayovsky]'s vulnerability but he will not listen and becomes mad at [him] and says nasty comments." Clopp's declaration noted that she had

changed Mayovsky's phone number and blocked Bowen's number but he had continued to use proxies to contact her. MacDuff testified about the lengths to which Bowen went in order to contact Mayovsky after multiple new phone numbers were obtained for her, including calling the reception desk of the facility where she lived to connect him to her room and then asking Mayovsky to read her new phone number to him.

This evidence established that Mayovsky's attorney and family had already tried to mediate contact with Bowen and that her overall condition improved when they were able to do so, but it also showed that Bowen repeatedly sought to circumvent those efforts. The trial court exercised its broad discretion, followed the recommendation of the GAL, and entered a VAPO with conditions responsive to the facts before it. The commissioner did not err.

Affirmed.

WE CONCUR:

Coburn, J.            , ACJ